STATE OF NORTH CAROLINA, Plaintiff,
v.
BOBBY DEVON BARE, Defendant.
No. COA07-1565
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Martin T. McCracken, for the State.
Michael J. Reece for defendant-appellant.
STROUD, Judge.
Defendant Bobby Devon Bare appeals from judgments entered consistent with guilty verdicts finding him guilty of drug trafficking in methamphetamine by possession, trafficking in marijuana by possession, trafficking in marijuana by manufacture, conspiracy to traffick in marijuana, trafficking in opium by possession, trafficking in opium by manufacture, possession with intent to sell and deliver cocaine, maintaining a building for the keeping or selling of a controlled substance and possession of drug paraphernalia. On appeal, defendant argues that the trial court erred in denying his motion to suppress evidence seized during a search of his residence. For the following reasons, we find no error.
The pertinent facts of this case are as follows: On 3 January 2007, Deputy A.S. Bailey ("Deputy Bailey"), with the Wilkes County Sheriff's Department signed an affidavit and applied for a search warrant to search defendant's home. The magistrate issued a search warrant at 2:30 p.m. on 3 January 2007 and the Sheriff's Department executed the warrant about an hour later. During the search of defendant's home, the Sheriff's Department seized $62,042 in cash, nine firearms, 19.75 pounds of marijuana, 124 grams of methamphetamine, 26 grams of cocaine, 1139 hydrocodone tablets, 22 oxycodone tablets, 89 carisprodol tablets and "5 morphine suckers." The Sheriff's Department also seized numerous construction tools and equipment, some of which were still in their boxes.
Defendant was charged with numerous drug related offenses. Prior to trial, defendant filed a motion to suppress the evidence seized from his residence, asserting that the affidavit failed to establish probable cause for the magistrate to issue the search warrant. The trial court denied defendant's motion to suppress in open court and the case proceeded to trial. A jury found defendant guilty of the drug related offenses. From judgments entered, defendant appeals.
Defendant contends that the trial court erred in denying his motion to suppress evidence because the affidavit supporting the application for the search warrant was insufficient to establish probable cause. Defendant claims the affidavit was insufficient because it contained stale information and it failed to demonstrate the reliability of the confidential sources. We disagree.
The contents of the application for a search warrant are governed by N.C. Gen. Stat. § 15A-244, which provides:
Each application for a search warrant must be made in writing upon oath or affirmation. All applications must contain:
(1) The name and title of the applicant; and
(2) A statement that there is probable cause to believe that items subject to seizure under G.S. 15A-242 may be found in or upon a designated or described place, vehicle, or person; and
(3) Allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched; and
(4) A request that the court issue a search warrant directing a search for and the seizure of the items in question.
N.C. Gen. Stat. § 15A-244 (2005).
When reviewing the magistrate's decision to issue a search warrant, the "magistrate's determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236, 76 L. Ed. 2d 527, 547 (1983) (citation and quotation marks omitted). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. at 238-39, 76 L. Ed. 2d at 548 (citation, internal quotation marks, ellipses and brackets omitted), quoted in State v. Arrington, 311 N.C. 633, 638,319 S.E.2d 254, 258 (1984); State v. Ledbetter, 120 N.C. App. 117, 121, 461 S.E.2d 341, 343 (1995) ("The standard for a court reviewing the issuance of a search warrant is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." (Citation and internal quotation marks omitted.)).
In conducting our review of the magistrate's finding of probable cause, we employ the "totality of the circumstances" test adopted by both the United States and North Carolina Supreme Courts. Arrington, 311 N.C. at 643, 319 S.E.2d at 260.
The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Arrington, 311 N.C. at 638, 319 S.E.2d at 257-58 (quoting Illinois v. Gates, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548 (1983)). In applying the totality of circumstances test, this Court has held that "[t]imely information tied to the specific premises to be searched can support a finding of probable cause." State v. Barnhardt, 92 N.C. App. 94, 97, 373 S.E.2d 461, 463, disc. review denied, 323 N.C. 626, 374 S.E.2d 593 (1988). "The experience and expertise of the affiant officer may be taken into account in the probable cause determination, so long as the officer can justify his belief to an objective third party." Barnhardt, 92 N.C. App. at 97, 373 S.E.2d at 462. Furthermore, "[t]he direct personal observation by the officer/affiant or his fellow officers isplainly a reliable basis for issuance of a warrant." State v. Leonard, 87 N.C. App. 448, 454, 361 S.E.2d 397, 400 (1987), disc. review denied and appeal dismissed, 321 N.C. 746, 366 S.E.2d 867 (1988) (citations omitted).
In his affidavit, Bailey affirmed that he had over fourteen years of law enforcement experience, which included "involve[ment] in the investigation, arrest and conviction of several persons for violation of the N.C. Controlled Substances Act." Based on his training and experience, Bailey attested that large-scale drug dealers maintain large amounts of cash, firearms, contraband proceeds, drug paraphernalia and records where they have ready access to them, including their homes, automobiles and storage buildings. To support a search of defendant's house, Bailey also attested, inter alia, to the following specific facts:
Your affiant has received information over the last year in which several confidential sources of information have stated that Bobby Bare, a heavyset white male in his 30's is a well known drug dealer and that he deals in various types of controlled substances including cocaine, marijuana, and assorted prescription pills which he sells from his residence. . . . Said sources also stated that Bobby Bare has hidden compartments located in his vehicles, in his home, in outbuildings and garages as well as holes dug in the yard containing controlled substances, cash and drug paraphernalia. Specifically said sources have described hiding places in the front yard of the residence and hidden compartments located in the vehicles that are parked out in front of the residence. Said sources state that Bobby Bare deals in ounces of cocaine. Said sources also state that they have observed various firearms in the residence as well as on Bobby Bare's person. Said sources also state that Bobby Bare is known to take stolen property in trade for cocaine and other illegal controlled substances. . . .
Your affiant is familiar with Bobby Bare and his residence as described in this warrant as the place to be searched and knows it to be the same person and residence as described by these confidential sources of information. Your affiant has been to this residence in February 2006 to assist in executing a search warrant in which approximately $20,000 in cash was located as well as numerous items located throughout the property that were still in their original unopened packaging. Another search warrant was executed in July 2006 after a stolen generator was located at this residence and a small quantity of marijuana and cocaine as well as drug paraphernalia was seized. Bare was arrested on these charges.
. . . .
On Saturday November 4th of 2006 your affiant did surveillance on the residence for approximately one hour and observed 3 vehicles coming to the residence, staying for a short period of time and then leav[ing] the residence. During your affiant[']s surveillance of the residence during this time period one of the vehicles went to the residence and an occupant of the vehicle entered the residence stayed for a short period of time and then left. Deputy C.A. Dancy and Deputy D.H. Parunak stopped this vehicle that was observed leaving the residence and a quantity of cocaine was seized from the operator of the vehicle and [the] operator was arrested.
. . . .
On Tuesday November 14th of 2006 your affiant and Deputy Dancy did surveillance on this residence that afternoon for approximately four hours. During that time period your affiant observed approximately 23 vehicles come to the residence stay for a short period of time then leave the residence just as they have done in the last periods of surveillance. Also your affiant observed a vehicle come to the residence and a white male from the vehicle went into the residence. Bobby Barethen came out of the residence walked to the vehicles that he has across from the residence, bent down behind a red vehicle and pick[ed] up a green colored bottle and put it under his left arm and carr[ied] it into the residence. Shortly thereafter the white male waiting in the residence left the residence. Then approximately ten minutes after that Bobby Bare walks to the patch of woods across the road in front of the house bends down beside a tree and appears to retrieve an item that was covered by leaves. Also during this period your affiant observed Jeff Harless and Steven Beasley standing in front of the Bare residence approximately 15 feet apart and your affiant observed Jeff Harless throw what appeared to be a white substance in a clear bag to Steven Beasley. Steven Beasley looks at this object puts in his right pocket walks to his vehicle and leaves.
On Friday November 17th of 2006 your affiant observed the residence for approximately four hours that afternoon and observed approximately 18 vehicles enter the residence stay for a short period of time and then leave the residence which your affiant can relate through training and experience [to] drug activity. During this time period your affiant observed Bobby Bare and Jeffery Harless come from inside the residence and Jeffery Harless walked to the rear of the residence directly beside of Bobby Bare's residence and retrieve[d] a small package wrapped in black plastic. Both Bare and Harless went back inside the residence[;] through your affiant[']s training and experience with illegal controlled substances, [he] was able to form the opinion that the object appeared to be in the same type of packaging that controlled substances are packaged [in]. Also on this day your affiant received information from another source that stated that marijuana was being sold from the residence.
. . . .
On Monday November 27[th] of 2006 your affiant did surveillance on Bobby Bare[']s residence for approximately one hour and observed four vehicles come to the residence stay for a short period of time and then leave there sidence. Your affiant then performed another period of surveillance that evening for approximately thirty minutes and observed a vehicle enter the residence stay for a short period of time and then leave the residence. Deputy Parunak then stopped the vehicle and seized a quantity of marijuana from the operator of the same vehicle that came to Bobby Bare's residence.
. . . .
On Friday, December 29[th] of 2006 your affiant conducted surveillance on Bobby Bare[']s residence for approximately two hours and observed ten vehicles come to the Bare residence stay a short period of time and then leave. During this time of surveillance your affiant observed a Jeff Harless go to the woods across the road from the Bare residence and pick an object up and put it into his left pocket and return back inside the residence.
On Saturday, December 30[th] of 2006 your affiant along with officer Dancy of this Department conducted surveillance on Bobby Bare[']s residence for approximately three and a half hours and observed 14 vehicles come to the Bare residence and stay a short period of time and then leave. During this time of surveillance your affiant and Officer Dancy observed Bobby Bare walk to the woods across the street and bend over and retrieve what appeared to be three pill bottles with a white substance in them, put them in his back left pocket and went back inside his residence. Also during this time of surveillance observed an unknown white male with grayish colored hair and a white male walk across the street from the Bare residence to where numerous vehicles are parked. The younger white male bent down next to a gray colored pickup truck and then the white male with gray colored hair got an item from underneath his shirt and handed it to the younger white male. The younger white male then appeared to be hiding the item under the gray pickup. After a few moments the white male with grayish hair nodded to the younger white male and both the[n] went back inside the residence.
Under the "totality of the circumstances" test, we conclude the facts contained in Bailey's affidavit were sufficient to support the magistrate's finding of probable cause to search defendant's house. The direct observations of Bailey and other officers in the course of their two-month investigation corroborated the confidential sources' claims that defendant was dealing drugs from his house. Further, Bailey's observations during November and December 2006 provided sufficient independent evidence to justify a reasonable belief that cocaine or other evidence of defendant's drug-related activity would be found in his house on the afternoon of 3 January 2007, a mere four days after Bailey conducted his last surveillance of defendant's house. Accordingly, the trial court properly denied defendant's motion to suppress the evidence seized pursuant to the search warrant.
No error.
Chief Judge MARTIN and Judge CALABRIA concur.
Report per Rule 30(e).